Mr. McConnell. Mr. Chief Justice, and may it please the Court, this Court has consistently rejected the argument that Federal statutes that both create a right to sue and also bar waiver of rights under the statute are sufficiently explicit to override the strong  In two of those cases, Gilmer and Payette, the Court construed a statute, the relevant language of which is virtually indistinguishable from that in the Credit Repair Organizations Act that we have before us today, that those cases involve the ADEA. Both the ADEA and CROA, as I'll call it, create a cause of action for aggrieved parties to bring actions for damages. And both statutes explicitly bar waiver of, quote, any rights under the statute. Sotomayor, what statute didn't have, as this one has, a disclosure requirement that says you have a right to sue? And that's the sole distinction between the two statutes. So let's talk about it. Sotomayor, well, it could be a meaningful one. So first of all, the disclosure statute is a – describes in layman's terms – gives a quick description of an operative civil liability section which is set out in 1679g and which tells us exactly what Congress had in mind in creating a cause of action. And when you look at the language of the actual operative provision, 1679g, it's almost as if Congress deliberately went out of its way to use language that would not preclude arbitration. That language provides that a person who violates the statute shall be liable to the person's adjudication. Sotomayor, suppose it said something different, Mr. McConnell. Suppose that the disclosure provision didn't exist at all, but that instead of that liability provision, you had a provision that simply said any person injured by a violation of this Act will have a right of action or will have a right to sue under this statute. And then you had the waiver provision that you have in this statute. Is that enough? Justice Kagan, I think that would be exactly the same, because a cause of action and a right to sue are the same thing. They mean the same thing. And this Court has consistently since Mitsubishi held that just because Congress creates a cause of action, which is a right to sue, does not preclude arbitration.  Ginsburg-McConnell, you started with the notion that the disclosure provision, the statute, is meant to apply to ordinary people, and if an ordinary person not schooled in the law read, you have a right to sue, wouldn't they understand that to mean I have a right to sue in court? Justice Ginsburg, in the ADEA context, the government itself, the EEOC, sends discriminated against workers a right to sue letter that tells them that they have a right to sue. But this Court has quite twice said that that does not preclude arbitration. And that's because a right to sue is simply a cause of action. It doesn't actually — that doesn't mean exclusively a right to be in court. It gives you rights which may be vindicated, and there are various ways in which they can be vindicated. And the Federal Arbitration Act provides that the — that this Court or the courts must enforce private contractual agreements that provide for the vindication even of statutory rights through arbitration. Alitoso, can you imagine any statutory language that would eliminate the right, the arbitration agreement, other than language that expressly prohibits the waiver of the right to sue in court in favor of arbitration? Yes, Justice Alito, I can imagine. Now, Congress has, to date, not used it. Congress knows perfectly well how to bar arbitration. They've done it in a number of statutes. In fact, in the very Congress that enacted CROA, there were three different statutes that were proposed that would have eliminated arbitration for particular statutory schemes. None of them were adopted. But Congress is perfectly aware of how to do this. I don't think they have to use the magic words, no arbitration, but they certainly have to do something considerably more direct than this. Here they've created a statute that provides that there must be liability and creates a cause of action. And then they tell people in a separate disclosure provision, by the way, added very late in the drafting process, right, simply to tell people that they have what is colloquially known for laymen as a right to sue. Now, we lawyers call things causes of action. We call them things like the right to bring civil action in a court of competent jurisdiction. That's lawyers' language. But when ordinary people talk about this, they think that's a right to sue. But a cause of action and a right to sue are exactly the same thing. Kagan Mr. McConnell, the cases that you cite in support of your position rest on a distinction between procedural rights and substantive rights, which you invoke here. But where does that distinction itself come from? Because it seems very atextual in nature, that distinction, which does appear in the cases. But when Congress talks about rights, why should we think of rights as limited to substantive rights rather than also procedural rights? McConnell First of all, only our waiver argument depends upon those particular cases. We have a second argument. But nonetheless, I think this comes from the very long tradition, at least back to the 1980s in Mitsubishi, of understanding that arbitration is a choice of a forum, but it must vindicate the substantive rights of the particular statute. So this is the way courts have talked about the relationship between arbitration and the substantive statute. So you look at the statute and you see what are the prohibitions, what are the substantive rights and so forth, and the arbitrators enforce all of those. But that the term rights does not include — it does not mean that there's an exclusively judicial forum, just that whoever is the decisionmaker is going to enforce exactly the same set of substantive rights which are in the statute. But, Justice Kagan, even if that were not persuasive, Congress is perfectly aware that that's the way that this Court had been interpreting the words, because Gilmer, which interprets the very words any rights in an anti-waiver provision as not including arbitration, happened just a few years, 5 years before enactment of this statute. And we know Congress was aware of Gilmer, because in the very same Congress that passed PROA also considered a bill, considered and rejected a bill that would have reversed the decision in Gilmer. So Gilmer and the very question of arbitration was before this Congress, and they knew that the word any rights was interpreted by this Court the way that it was in Gilmer, and they used precisely the language that was interpreted that way in Gilmer. And so at this point, there's a vocabulary. It's like there's a glossary. Congress is using it, and even if it may not be, you know, wholly textual, as you say, that's the way Congress now addresses the matter. The Act in Gilmer did not designate court action or right to sue as a right within the non-waivable provision. That's true, Justice Ginsburg, and the question is does it matter. I would say anyone looking at the ADEA's language, which says that an aggrieved person may bring a civil action in court, anyone would say that that is a right to sue. It is surely a right. And indeed, when this Court interpreted that statute in Payette, this Court called it a right, a right to a judicial forum. Three times in the opinion, the Court refers to that as a right. And the fact that our statute here refers to a right to sue rather than a right to bring a civil action seems certainly against the backdrop. Recall, please, that the question here is whether Congress has explicitly abrogated or the — specifically disavowed or specifically barred the use of the arbitrability of the contracts, and that all doubts are supposed to be resolved in favor of arbitrability, and the statutes must be interpreted with a healthy regard for the policy in favor of arbitrability. Considering this and considering the paltry basis in the text for that conclusion, I don't see how the Ninth Circuit's decision can be withstood, could be upheld. Roberts. Do you think a — the word lawsuit typically describes an arbitration proceeding? If you're subject to an arbitration, would you say I'm in a lawsuit? I do not think so. Well, why doesn't a right to sue refer to a lawsuit? It refers to a cause of action, Your Honor. And we can call that a lawsuit, too. I mean, often that's another layman's term for a cause of action. But this Court has held, I don't know how many times, I believe it's at least six times since Mitsubishi, that just because Congress creates a cause of action and says that it will be in court, that does not mean that that does not preclude arbitration, that that creates a cause of action. And I think the underlying logic of this is that the existence of a cause of action or of a right to sue, which I submit as a synonym for a cause of action, is not inconsistent with arbitration. It's the precondition for arbitration. If there were not a cause of action, there would be nothing to arbitrate. Right? So in every case in which there's a legal arbitration, there's a cause of action. It might arise from contract. It might arise from a statute. But in every single arbitration, there is a cause of action. If this Court were to interpret it as a case of arbitration, it would be a case of arbitration. Ginsburg. No, if this were written to be read by and understood by lawyers, I think you would have a stronger argument.  And they read, you have a right to sue. And that right is not waivable. A right to sue, they're not going to think about cause of action. They don't know what cause of action is. But they do know that a right to sue is a right to bring a lawsuit. Justice Ginsburg, again, if that is so, it would apply to other cases in which the language right to sue is used. For example, the EEOC's right to sue letters. What could be more explicit than that? But this Court has held several times that just because the EEOC sends a right to sue letter doesn't mean that Congress is. Ginsburg. Is that in the statute or is it just a colloquial? It's in the regulations, Your Honor. But Title VII doesn't say right to sue. It's a name that the agency uses, but it's not in the statute. The statute doesn't say you have a right to sue. Well, what the statute says is you may bring a suit in court. And so if this Court – I do not see how the Court can say that the right, that the language, the right to sue is different from a right of action. It certainly – it is the same thing. One way you could do it is that the right to sue is more familiar colloquially. If somebody, you know, hits your car and you jump out angrily and say – you can say I'm going to sue you, you're not likely to say I'm going to bring a cause of action against you. We have – there's no reason to think that when Congress appended a disclosure provision toward the end of the drafting of this statute and simply used a colloquial version of cause of action so that ordinary people would understand it, that they intended to change the meaning of the operative provision. The operative provision tells us, I think, very clearly what Congress meant. And then in this sort of quick, shorthand, colloquial way, they're telling people, yes, they have an action. But just like they have an action – Perpsons have an action under the Sherman Act, they have an action under the RICO, they have an action under the ADEA, they have an action under the Truth in Lending Act. In all of these cases, people have a right to sue, but this Court has held that arbitration vindicates the cause of action. Kennedy, in the standard arbitration agreement, if Smith and Jones agree to arbitrate and Jones then brings suit in court, and the action is then stayed pending arbitration, has there been a breach of the arbitration agreement simply by bringing the suit? I mean, doesn't that happen rather often? It does happen rather often. I'm not sure what the – I would say no. What I would say is that the question of arbitrarily has been put before the Court and the Court will decide whether to enforce the arbitration clause or not. And, of course, suits are brought after arbitration to enforce the arbitration award. Exactly. Exactly. So in this sense, it's not that the cause of action goes away. It's not the cause of action that's not being waived. It's simply being vindicated in a different way, in a way which Congress and the Arbitration Act, as told us, is perfectly appropriate, just as appropriate as vindication in court, and that we should leave it to – and that the contract between the parties to decide which of the forms for vindication of the rights would be used should be enforced. Except that this is not what the parties decide. These are, take it or leave it, contracts. So the consumer doesn't really elect arbitration. It's just presented as part of the terms that the consumer can take or leave and not negotiate it. That is an argument against arbitration that this Court has rejected several times. It's a question of whether we take that into account in determining what you have a right to sue means. Well, Justice Ginsburg, Congress – that's a policy question. And Congress has given us an answer. Recently, by the way, Congress has indicated a slightly different answer, which will affect cases like this in the future. As part of the Dodd-Frank regulatory reform bill, Congress required the new Consumer Financial Protection Bureau to conduct a serious study of the use of arbitration procedures in consumer financial matters to find out whether things like what you refer to, Justice Ginsburg, the types of contracts and so forth, are fair to consumers. So we'll get an authoritative answer to this. And Congress then vested this new bureau with authority either to outlaw arbitration rewards or to require conditions or to reform them. But in the meantime, the policy that Congress has set is the policy in the Federal Arbitration Act, which is one of a strong policy in favor of enforcing arbitration contracts. You know, except if Congress indicates otherwise. Unless Congress has indicated otherwise. And I guess the problem here is that there is this language in this disclosure provision which is meant, you know, truly to inform consumers about their rights and about where they're going to end up resolving their disputes. And it says you have a right to sue, and you're asking us essentially to read that language as you have a right to bring a claim in court, but it's probably going to end up in arbitration because of the nature of your form contract. And that seems a very different kind of statement to consumers. Justice Kagan, I do not see how it would be any different from a consumer who reads any of the statutes that this Court has held are subject to arbitration. If, for example, in the Truth in Lending Act, which this Court interpreted in the Green Tree case, as part of the arbitration contract, it was required to send the consumer a copy of the statute. The consumer would read in the statute that there's a cause of action, that they can bring suit in court to enforce their rights under the Truth in Lending Act. They would read that statute, and they would draw exactly the same conclusion that they do from the shorthand layman's language of right to sue. But again, even if that were so, I think it's a matter of how — of statutory interpretation that a disclosure provision cannot change the meaning of the operative section. The operative section, which creates the rights and liabilities here, is section 1679G. And not even Respondents seriously claim that that section is — shows concern. It's a congressional intent to prevent arbitrability. And that seemed — the fact that there's a disclosure provision that uses more informal language instead of the lawyer's language used in 1679G does not change the meaning of the statute. Unless there are further questions, I will reserve the remaining part of my time for rebuttal. Thank you, counsel. Mr. Nelson. Mr. Chief Justice, and may it please the Court. The Credit Repair Organizations Act provides consumers with what it explicitly denominates a right to sue. And then it says that any right of the consumer under the statute is nonwaverly. As this Court has said, that there's a violation of the statute the minute one of these organizations ask someone to sign an arbitration clause? There's a thousand-dollar penalty for the mere asking. There's a technical violation in asking because in 1679F, not only are waivers made unenforceable, but it is prohibited to ask someone to waive their rights. However, that does not mean that you actually have a cause of action to go in and sue somebody for that, because remember, under 1679G, what you can sue for is your money back. If somebody has asked you for a waiver, you didn't sign the contract, you didn't pay them any money. Or your damages, if somebody asked you for a waiver and you never signed up with them, you don't have any damages. And then punitive damages in addition, which, you know, the general rule about punitive damages is you get them on top of actual damages if you have actual damages. So it's yes, it's a technical violation if a company engaged in a pattern or practice of it, the FTC could quite rightly go in and get an injunction against that. But it's not a case where there would be some onerous penalty imposed on a company merely for asking for a waiver. Sotomayor, well, doesn't that reading, however, make suspect your claim that Congress would have intended, without any discussion in the legislative history, and our case law has said you have to read the intent to bar arbitration, both from the language of the statute, its context, and its history. I just don't see any history here that supports your reading. Well, Justice Sotomayor, I want to take that in two parts, because the first was tied to the attempt to procure a waiver and whether that calls into question whether Congress really could have meant this. I mean, it's sort of an unusual provision to say not only can you not waive rights, but it's a violation even to ask somebody to waive them. But that's no more unusual with respect to the right to sue than with respect to any other right under this statute. For example, the right to cancel after three days. Everybody would concede, I think, that that's a non-waivable right under the clear language of this statute. It's an unusual and perhaps onerous provision to say that if somebody just suggested that you waive that right to cancel and you never actually waived it, they still violated the statute. But, you know, that's what Congress wrote here, because in this statute it was concerned with an industry that it saw as overreaching pervasively in relation to the people that it was trying to sign up for its services. And that's why Congress wanted a very strong prohibition of waiver of rights that even attempted, that even extended to attempts. Now, as to the other thing that's going on in this case, I don't think it's unusual or clear, that Congress knew it had to make especially clear that it wanted to void arbitration agreements. So if that's the case, why didn't Congress do what it's done in a thousand other statutes, or maybe that's an overstatement, but a number of other statutes, which is to say so? First of all, the rules are not that Congress has to be especially clear in this context. And in fact, the Court has said over and over in the line of cases starting with Mitsubishi, McMahon, Rodriguez de Quijas, and Gilmer, that what has to be discernible — and this also gets back to Justice Sotomayor's question — it merely has to be discernible from the text or the legislative history or the structure and policies of the Act that there's an intent to preclude waiver of the right to judicial remedies. That's not an unmistakable plain statement rule. It's not a requirement of explicitness in the sense of explicitly using the term arbitration. As even my friend stated, there's no requirement of magic words. What this Court said, what it told Congress in the years leading up to this statute is, you have to express a discernible intent to preclude waiver of the right to judicial remedies. Scalia. And you don't need a magic word, but it seems to me you need something more than a provision dealing with what you have to tell to the people who accept these contracts. I mean, it's not in the substantive part of the statute. It's in the part of the statute that tells you what provisions of the Act you have to make a provision of. It's a very strange way for Congress to say, no arbitration, by putting this language in a section that has nothing to do with the rights under the Act. It is intended to be a summary of the rights under the Act. Justice Scalia, I think it's not a strange way at all, but a very direct way in the context here. Remember, in Gilmer, what the Court was dealing with was a statute that, as amended in an amendment that wasn't actually before the Court in Gilmer, said you can't waive any right under the statute. But that then raises a question, well, what do we mean by rights under this statute? And the Court concluded there and reinforced in Pyatt that it interpreted that to mean substantive rights in the absence of a textual indication that when Congress used the term rights in this statute, it was intending to protect the procedural right to go to court. Here we have something very different. Congress creates a cause of action, which, as my friend says, colloquially someone could call that a right if they wanted to. But the cause of action says you can obtain this liability, the Court will determine it, you obtain it through an action. That certainly gives you an entitlement to go to court. But then Congress goes further and it denominates that one of the rights under this statute that are so-called. Scalia. Do you think that Gilmer would have come out differently with regard to one of the procedural rights involved in that case if the statute had happened to refer to that procedural right as a right? Procedural rights are rights, aren't they? Yes, they're definitely rights. So if the statute in Gilmer had referred to one of the procedural rights in passing as a right, you think that one would have been non-waivable? I think that if Congress had expressly denominated something in that statute as a right. But procedural rights are rights. I mean, to denominate it as a right is. Well, but the question is, does any right refer to both procedural and substantive rights? Exactly. Which is what this Court held that it did not in Payette. But when Congress, you know, it does matter what words Congress uses. And rights is a word that can have a lot of meanings. But this is a statute that's not a procedural right. But you're saying, in answer to my question, you're saying that just because the statute refers to procedural rights as rights, just as we do, all of a sudden, simply because the statute uses our normal language, those procedural rights are elevated to the level of substantive rights and can't be waived. That can't be right. I think if Congress makes clear in the statute that what it means when it's talking about rights is it includes procedural rights, and then it has a provision that says any right under this statute is not subject to waiver, that creates a very strong inference that Congress meant what it said. But in fact, in referring to a procedural right as a right creates any inference at all. It is a right. And when Congress has said, I mean, many of these statutes, such as Title VII and TILA, don't say that rights are non-waivable. This statute is a unique statute in its phrasing. It has a non-waiver provision applicable to any right, and it has a list of rights. That's pretty unusual. Ginsburg. What else is non-waivable besides the three days to back out? Well, the other thing that this statute makes non-waivable besides rights is protections, and which is a phrase that isn't then tied to anything defined in the statute. But I think that, for example, all of the prohibited practices listed in section 1679B, which are at pages 4A to 5A of the red brief, those would be non-waivable. You couldn't waive your right not to have the credit repair organization make false statements to you. You couldn't waive your right under 1679BB not to have to make a payment in advance to a credit repair organization. You can't waive the right to the disclosures provided for in 1679C or the protection provided by those disclosures. And 1679D requires written contracts and specifies those terms. Those would all be subject to the provision in the statute that says you can't waive any protection or any right provided by the statute. Kagan. Do you know, Mr. Nelson, whether this statute is unique in this sense? Do you know of any other statute that arguably voids arbitration agreements without saying that they're voiding an arbitration agreement? No. There is a sort of a pending disagreement, perhaps, over whether the Magnuson Moss Warranty Act does, but that's because of some very specific language in that statute about informal dispute resolution mechanisms and the manner in which that has been interpreted in agency regulations. So this is really the only statute that I'm aware of that uses this formulation. But you remind me of your earlier question, which I never got to finish answering, about the thousands of other statutes that say specifically that you can't enforce arbitration agreements. In fact, there are very few such statutes. There were none at the time this statute was enacted. The first one appeared 6 years later. The only time that there's been any number of them is in the 2010 Dodd-Frank Act, which came after what I would say is a lengthy period of considerable attention that had been paid by advocates before Congress to the issue of arbitration that I think led to the desire to use a sort of a belt and suspenders approach in those statutes. But what we had here in 1996, there had never before been a statute that prohibited the enforcement specifically of an arbitration agreement in those terms. And as Mr. McConnell said, there were some proposals, unenacted proposals, that had been floated at that time. But I think the one thing that is clear is that we don't learn how Congress does things by looking at things that it didn't do, and that's all those unenacted proposals were. Ginsburg. Would your position of right to a lawsuit to that extent to a post-dispute genuinely bargain for a right to arbitrate? No, I think not, Justice Ginsburg, and for this reason. The Court has always differentiated between post-dispute settlements of claims and pre-dispute waivers, and has not considered agreements to settle, absent very special either statutory language, such as in the ADEA, which does apply a waiver provision to some types of settlements. And in the Fair Labor Standards Act, where there's a very specific policy reason for prohibiting certain kinds of settlements. But generally, the Court has not considered the settlement of a case to be a waiver of the right to bring the case. And that primarily came in the FELA cases that we cited in our briefs. But I think it was significant that in Wilco v. Swan, where the Court said, we're going to interpret the Securities Act not to allow waivers of the right to sue, the Court said, of course, this wouldn't apply to something that came post-dispute. And in McMahon v. Rodriguez v. Quijas, what the Court disagreed with Wilco v. Swan about was whether the right to sue under that particular statute was non-waivable. But it favorably commented on the notion that, of course, even if it were, it wouldn't bar a post-dispute agreement to arbitrate a claim as a way of settling an actually pending dispute. And that's why I think when Congress enacted this statute, it would have been acting against that backdrop and would not have no one would have thought that a settlement agreement is a waiver of the right to sue.  Ginsburg. Another argument that is made in opposition to your position is that the statute says any waiver of any protection or right may not be enforced by any court or any other person. And the suggestion is any other person must contemplate an alternate dispute method that doesn't involve court, court or any other person. Well, I don't think that it necessarily contemplates an alternative dispute resolution mechanism, because I think, for example, that would bar when someone goes to court to compel arbitration, they are enforcing an arbitration agreement by bringing an enforcement action. So that would bar them from doing that. So any other person doesn't necessarily mean arbitrators. But even to the extent that it comprehends arbitrators, and maybe even one might have thought was principally applicable to them, you've got to realize that this statute, what it prohibits is only the waiver of the consumer's ability to arbitrate per CROA claim. It doesn't bar a credit repair organization from requiring a consumer to arbitrate the credit repair organization's breach of contract action. And, in fact, most, well over 99 percent of the consumer arbitrations that were handled by the arbitration forum that was designated in this contract were collection actions brought by a company that says this consumer owes me some money. So that's kind of the norm. That's the general run of arbitration cases. And if a credit repair organization were to initiate an arbitration against a consumer, that wouldn't violate the non-waiver provision. But if the consumer then defended and said, wait a second, this contract is void because I never got the right to cancel, the provision would quite clearly prevent the arbitrator in that circumstance from saying you waived the right to cancel. Roberts. And what about the argument that the consumer retains the right to sue, since they can go into court with their complaint, but it's simply the rule that the court will apply is that you have to proceed to arbitration? Well, I think it would be a remarkably crabbed notion of having a right to sue that meant you could file a complaint that was mandatorily subject to decision elsewhere.  It's frequently the way these issues come up. I mean, people think they cannot be forced to arbitrate either under the agreement or any other provision. They will bring their complaint in court and then there will be a judicial resolution of whether or not the proceeding should go to arbitration. But all that has then been resolved in that suit is not the plaintiff's claim under CROA, which is what he has a right to sue on. All that's resolved is the issue of whether he has a contractual obligation to arbitrate, which he has breached by going into court. And this goes to Justice Kennedy's question. Under the FAA, you can compel arbitration when someone has filed a complaint that is in breach of an agreement to arbitrate. So they don't actually have a right to sue. You can't stop them from going and filing the complaint. But once they do, you come in and say, no, you have no right to proceed on the merits with this claim in court. And, in fact, that's exactly what the arbitration would be. Kennedy, can you get damages in the arbitration for the cost of attorney's fees to go to the court to say that you had to go to the arbitration? No, I don't think you would generally have that entitlement under any rule of law that is normally applicable in American courts. However, if your arbitration agreement provided for that, I'm afraid I can't point to any decision that would make it unenforceable, much as I would regret that result. So, you know, I think in a real sense, the consumer has no right to sue merely because they can run into court and then be compelled to arbitrate. And that's exactly why this Court, in every one of its decisions, enforcing arbitration agreements or not, has referred to the arbitration agreement as a waiver of the right to proceed judicially. It's used that phrase over and over again in McMahon, Rodriguez de Quijas, Mitsubishi, and Gilmer itself. The common recognition of all those cases is that the arbitration agreement is a waiver of the person's right to proceed in court. Roberts, you agree, I take it, that you would lose if the statute said you have a cause of action? Yes. You know, a cause of action I don't think would do it for us. In fact, that's exactly what the ADEA says, that the section that creates a judicial remedy is headed cause of action. And so, you know, the question again is, right is a word that can be used in many senses. It's a word sort of like jurisdiction. It gets thrown around loosely. But when Congress says a right is non-waivable, it's referring to something specific. The question is, what is it referring to in a statute that uses the term right and uses it to describe the ability to go to court? And again, that right to sue language is important in two ways, because it not only specifies that the 1679g remedies are a right for purposes of the statute, but it says something about the nature of the right. It's a right to sue. It's not just a right to get those damages, to get your money back. And sue, as I think my friend agreed. Well, I guess it goes further than that, your argument does, it seems to me. Your argument is the waiver, the non-waiver of rights provision would normally be read to mean non-waiver of substantive rights. But the notice given to the consumer here, which refers to the procedural right to sue as a right, eliminates that presumption. So I presume, therefore, that your position is that all procedural rights under this statute cannot be waived. Because, I mean, that's what we're talking about. What does right mean when it says rights are not waived? And our prior case law says ordinarily that means only substantive rights. But here in this statute, it refers to the right to sue, which is certainly a procedural right, as a right. So I presume all the other procedural rights in this statute likewise cannot be waived. Well, I'm not really sure there are other procedural rights in the statute. Oh, there aren't. I mean, unless the right to cancel within 3 days, I suppose, could be called a procedure in one sense, although it's — I think it probably would generally be categorized as a substantive right. But as far as procedural rights of the consumer, they're set forth in 1679g, and they are the right to bring an action, either on an individual or class basis, for the damages and attorney fees specified in that section. And that's what I think is being referred to as the right to sue. Now, if there were something else in the statute that one might arguably call a right and arguably call procedural, I mean, it's hypothetical because I don't think it's there. But I would not jump to the conclusion that it was a right if it was not comprehended by right to sue, because I think what that statement, right to sue, makes non-waivable is the right to sue. It's not just any procedural thing in this statute that one might loosely call a right. Kennedy, it seems to me that under your — well, I'll let you answer. Justice Kennedy, let me divide it up. If the liability section said you had a right to sue and there were no disclosure sections at all, I would say that's plenty good enough. If the disclosure section says you have a right to sue or to go to arbitration, I think you would have to then say sensibly what is Congress talking about when it's referring to this, and you would have to read them together. And I would have a hard time standing up here and saying that a statute that told people right to sue or arbitrate meant right to sue only and foreclosed arbitration. And, you know, I think that really would be a very different matter. Kagan. Kagan Mr. Nelson, you just said if the liability section said you have a right to sue, that's okay, but if it says you have a cause of action, that's not okay. But the right to sue is really just a colloquial way of expressing the first. So why should we draw the line between those two things? Nelson Well, when you say colloquial, I'm not — I don't want to fence with you, but I think that that's selling it a bit short. This is a statute where Congress prescribed a notice, prescribed it in statutory terms, did it so people would have an understanding of what their rights were, and did it in a way that no reasonable consumer would understand meant, oh, this nonwaivable right is not really to sue in the way that I would ordinarily understand the word and even that courts normally use it, but actually to do something else. So I don't think it's colloquial in a disparaging sense. What it is, is something that is designed to convey a clear meaning. And the clear meaning that it conveys is you have a right to go to court. Now, of course, even a disclosure that you have a right to go to court wouldn't be enough to get you over the hump if you didn't also have a provision that made that right nonwaivable. But again, here what you have is both. And in doing that, in writing that statute, Congress was doing exactly what the Court had told it. It didn't do in Gilmer. It didn't do in McMahon. It didn't do in Mitsubishi. It created a right to a judicial remedy that is not subject to waiver. Unless the Court has any further questions, I will stop. Roberts. Thank you, counsel. Mr. McConnell, you have 10 minutes remaining. Sotomayor. Can we go to the issue of class action? If we buy your argument that procedural and substantive rights are different, is it your position that you could seek a waiver of a class action even though this statute expressively contemplates class actions? Actually, Justice Sotomayor, I think this statute specifically does not require – it contemplates but does not require class actions. If you look at 1679Ga2b, which is the class action provision, it's on page 59A of the appendix to the petition, all that it says is that in the case of a class action, here is how we would – here is how the damages, the punitive damages would be calculated. It does not say that there must be class actions. It doesn't make that a non-waivable right. So your answer to me is that that is waivable. That's not a right contemplated by the right to sue. Actually, my answer to you is that it's not a right to begin with, whether waivable or not. But you have to meet the prerequisites of a class action before you're entitled to seek one. But your position is that's not a protected right. Well, may I – if we were to hypothesize that the statute did provide that there shall be class provisions, which this does not, I think this statute is agnostic on that. But the hypothetical statute where class actions are contemplated, I would not argue that that is necessarily waivable. What I would argue is that that can be vindicated through arbitration, that there can be, as this Court discussed just last term in Concepcion, there can be class arbitration proceedings. But this arbitration agreement precludes class actions, doesn't it? Yes, it does. And again, this statute does not require that there be class proceedings. I'm only addressing a hypothetical statute that did. Unless we read the disclosure requirement of a right to sue to mean that you're entitled to bring your action in court with whatever protections, procedural and substantive protections, that entails. Yes, and that seems to me just a further reason not to interpret a disclosure provision with a layman's language as importing, you know, very specific legal notions. I think this simply means, right to sue simply means cause of action. And it's a — each of the rights, I should point out, in the disclosure provision is — has its actual textual home elsewhere. None of them are created in the disclosure provision. Each of them is created elsewhere, either in this statute or another. To find out exactly what they entail, you look to the substantive provisions. Here, you would look to 1679g, and you would see that class actions are possible but not required under this particular statute. Could you, in an agreement, waive the provisions of 1679gb that specify what a court shall consider in awarding punitive damages? I don't think so, Mr. Chief Justice. Most lower courts treat the right to punitive damages as a substantive right, which would not be waivable. No. What if you don't want your arbitrator to consider those four requirements? Could you waive particular aspects? I mean, that tells you that, first of all, it says, of course, the court shall consider. But I take it your position is when they say the court, they mean the court or arbitrator? It means the decisionmaker. Many statutes, of course, refer to things that courts might do, even though those statutes can be vindicated in arbitration. Title VII, for example, has several provisions in which it says, if the court determines this, then it may do that, for example, issue injunctions and so forth. When you import the substantive provisions of a statute into an arbitration proceeding, everything that would be substantively available from a court becomes available from the arbitrator, and that's the way I would read the punitive damages section here. I note, by the way, if I might just respond to a few of the points made by my friend in response to questions. To begin with Justice Sotomayor's interesting question about the fact that the statute appears to make even offering a waiver, offering an arbitration clause, a violation. It's actually even worse than that for two reasons. One is that under their reading, a settlement is surely just as much a waiver as a — as an arbitration is. Now, they say, oh, well, we — that only means post-dispute waivers, but that is not what the statute says. This statute is about all waivers. In contrast to other statutes previously enacted, like the ADEA, which distinguished between pre-dispute and post-dispute waivers, this one does not. So their position suggests that even a settlement offer is a violation of the statute. Ginsburg, no, their position doesn't suggest that, but I asked him about post-dispute and he brought up settlement as well. He said that their interpretation does not exclude a settlement in which the plaintiff agrees. Well, Justice Ginsburg, that was his answer, but what that tells us is that he is not giving us a plain-language meaning of the statute, which is all that they have. Right? Their entire position is based upon a plain-language reading of the statute. Remember the way the Ninth Circuit begins its opinion by quoting Alice in Wonderland. It's all about plain language, but they do not offer us a plain-language interpretation of the statute. In order to avoid absurd consequences, like making settlement offers a violation of the statute, they have to create exceptions, unspecified exceptions to the text. It would be much easier simply to follow the rules of construction that this Court had announced before the statute was enacted and against which Congress operated. Roberts Those rules of construction is that you don't read statutes to the extent they lead to absurd results. I mean, I think you can still say follow the plain language, but that doesn't mean you go so far as to say you can't enter into a settlement. I think it's easier, though, simply to assume that Congress was using words in the way that this Court used them in Gilmer just a few years before, that that's a much more straightforward way of reading the statute. Scalia I'm not sure that a settlement is a waiver, anyway. It's a vindication. You vindicate your right to a settlement. I don't know that you waive it. Justice, I think you can say that when you go to arbitration, you vindicate the substantive rights of the statute as well. And indeed, this Court has used that very language in Mitsubishi with respect to arbitration. The — just a couple of other small points. My friend points out that this is the first statute in — or that at the time of the statute in 1996 that there had been no statute that explicitly barred arbitration, which is historically true, but I think not particularly revealing. It was only in 85 in Mitsubishi and then 91 in Gilmer that Congress became aware that it needed to do this in statutory causes of action. In 19 — and by 1996, they were considering bills that explicitly avoided arbitration clauses. They weren't enacted, but this is for political reasons. Remember the political composition of Congress in 1996. It is not surprising that statutes voiding arbitration agreements become more common when the political composition of the Congress changes. This is fundamentally a political choice and ought to be — we ought to respect the choices that Congress has made. Unless there are further questions, I will waive the remainder of my time. Thank you, counsel. Unless it's an unwaivable right. You have no right to time before the vote is made. Thank you, counsel. The case is submitted.